FILED
DEC 19 2012
CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR. NO. 2:12cr 227-WKW |
| ) | [18 U.S.C. § 1347; |
| v. ) | 18 U.S.C. § 1035(a)(2)] |
| ) | |
| LASHAWN DENISE ANTHONY ) | **INDICTMENT** |

The Grand Jury charges that:

## INTRODUCTION

1.  At all times relevant to this Indictment:

    a.  Youth Enhancement & Family Services, Inc., ("YEFS"), was an Alabama non-profit corporation, incorporated in Elmore County, Alabama, on or about March 4, 2004, with a stated purpose "to establish and provide nonprofit community social services for at-risk youth and low income families."

    **The Medicaid Program**

    b.  The United States of America, on behalf of the Department of Health and Human Services ("HHS"), administered both the Health Insurance Program for the Aged and Disabled established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.* ("the Medicare Program"), and Grants to States for Medical Assistance Program pursuant to Title XIX of the Act, 42 U.S.C. §§ 1396, *et seq.* ("the Medicaid Program").

    c.  The Medicaid Program provided funding for medical and health-related services for certain individuals and families with low incomes and virtually no resources. Those eligible

for the Medicaid Program included pregnant women, children, and persons who were blind or suffered from other disabilities and who could not afford the cost of health care. The Medicaid Program was a joint federal-state program pursuant to 42 U.S.C. § 1396b. If a state elected to participate in the Medicaid Program, the costs of Medicaid were shared by the federal government. In return, participating states must comply with requirements imposed by the Social Security Act and regulations promulgated under the Social Security Act.

      d.      Under the Medicaid Program, each individual state, pursuant to broad national guidelines established by federal statutes, regulations and policies: (a) established its own eligibility standards; (b) determined the type, amount, duration and scope of services; (c) set the rate of payment or reimbursement for services; and, (d) administered its own Medicaid Program.

      e.      The State of Alabama has participated in the Medicaid Program since its plan was approved, effective January 1, 1970. HHS, through its agency known as the Centers for Medicare & Medicaid Services ("CMS"), was responsible for administration of the Medicaid Program and provided approximately 73.5% of the funds to pay providers to deliver health care goods and services under the Medicaid Program in Alabama.

      f.      In return for receipt of federal subsidies, the State of Alabama was required to administer its Medicaid Program in conformity with a state plan which satisfied the requirements of the Social Security Act and the accompanying regulations under the Social Security Act.

      g.      The State of Alabama administered its responsibilities under the Medicaid Program through the Alabama Medicaid Agency ("Alabama Medicaid"), a single state agency responsible for administering the Medicaid Program throughout the entire State of Alabama.

h.     In order to carry out its mission, Alabama Medicaid contracted with health care providers who agreed to deliver services directly to those enrolled in the Medicaid Program and to bill Alabama Medicaid for those services.  Alabama Medicaid was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

i.     YEFS submitted an Alabama Medicaid Provider Enrollment Application to Alabama Medicaid on or about December 28, 2006, indicating on the Provider Enrollment Application that its provider type was psychologist.  Based on its Provider Enrollment Application, YEFS became a direct bill provider for Alabama Medicaid in the Early and Periodic Screening, Diagnosis and Treatment for Individuals Under Twenty-One Program ("EPSDT").  As a provider under EPSDT, YEFS was authorized to provide treatment to Medicaid-eligible children and their families "to correct or ameliorate defects, physical and mental illnesses and conditions discovered during a screening" as specified in Ala. Admin. Code § 560-X-11.02(5).  By becoming a participating provider in Medicaid, enrolled providers such as YEFS agreed to abide by the policies and procedures, rules and regulations governing reimbursement and were required to abide by all the provisions of the Social Security Act, regulations promulgated under the Act, and applicable policies and procedures, rules and regulations adopted and issued by Alabama Medicaid.

j.     Defendant LASHAWN DENISE ANTHONY ("ANTHONY") was the Executive Director of YEFS.  ANTHONY signed the Provider Enrollment Application in her capacity as Executive Director of YEFS.  As Executive Director, ANTHONY directed all the operations of YEFS, including the billing practices for claims submitted to Alabama Medicaid.

**Claims for Reimbursement Under the Medicaid Program**

k.      To be eligible to bill and receive reimbursement for medical services provided to Medicaid-eligible patients, a physician or other health care provider or clinic must possess a unique provider identification number, known as a National Provider Identifier (or "NPI") and must be assigned a provider number for billing purposes. All claims for reimbursement must be submitted under a valid NPI for services appropriately provided by the identified provider. When services were provided by a non-physician or some other health care professional who did not have an NPI, this fact must be noted on the claim. In some instances, another appropriate code or "modifier" must be reported on the claim when submitted to Medicaid. A modifier often limited the amount of reimbursement for the associated claim.

l.      Claims for Medicaid reimbursement are submitted via paper or electronic versions of documents known as HCFA or CMS 1500 forms. These CMS 1500 forms and their electronic versions contained the patient's identifying information, the provider's unique NPI, and a description of the items and services provided for which reimbursement was sought. Alabama Medicaid had contracted with HP Enterprise Services, LLC, which acted as the fiscal agent on behalf of Alabama Medicaid and had responsibility for processing and paying claims on behalf of Alabama Medicaid which were submitted to Alabama Medicaid by enrolled Medicaid providers. The NPI affixed to a claim represents to Alabama Medicaid that the associated provider actually rendered the services being billed, unless a modifier is appended to the claim. Both the paper CMS 1500 form and its electronic version had a field for identifying the "rendering provider" on the actual claim itself.

m. The items and services were identified in each claim submitted by a standard, uniform code number as set out in the American Medical Association's "Current Procedural Terminology" (or "CPT") manual, a book which listed terms and codes for reporting procedures performed by physicians and other health care providers. Alabama Medicaid had adopted the CPT for purposes of identifying items and services for which providers sought reimbursement. Each code corresponds to a specific service as described in the CPT book.

n. CPT codes for certain psychiatric and psychological services, including CPT Code Nos. 90804 through 90819 and 90847, described the psychotherapy service to be provided by a trained and licensed mental health professional with respect to the amount of time that such provider was expected to spend with a patient providing that service. A higher reimbursement rate was paid for services requiring a longer amount of time spent with the patient. Examples of these codes and their respective descriptions include:

(1) CPT Code Nos. 90804/90805 – Individual psychotherapy, insight oriented, behavior modifying and/or supportive, in an office or outpatient facility, approximately 20 to 30 minutes face-to-face with the patient. 90805 – with medical evaluation and management services.

(2) CPT Code Nos. 90806/90807 – Individual psychotherapy, insight oriented, behavior modifying and/or support, in an office or outpatient facility, approximately 45 to 50 minutes face-to-face with the patient. 90807 – with medical evaluation and management services.

(3) CPT Code No. 90847 – Family medical psychotherapy with the patient present.

o.      A provider under Alabama Medicaid was permitted to submit a claim for payment or reimbursement only for those services actually performed by the provider. To be reimbursed for services under any CPT code, the provider must properly document in the patient's records that the service billed was actually provided and must truthfully and accurately indicate the provider who actually provided or rendered the service.

**The Provider Manual and Use of Modifiers**

p.      Alabama Medicaid made available to all providers enrolled to bill Medicaid the *Alabama Medicaid Management Information System Provider Manual* ("the Provider Manual"), which contained all the rules and regulations adopted and promulgated by Alabama Medicaid with respect to providing services to Medicaid-eligible patients and billing Alabama Medicaid to seek payment or reimbursement for those services. On a quarterly basis, Alabama Medicaid posted updates to the Provider Manual on its website, www.medicaid.alabama.gov. Alabama Medicaid also issued periodic alerts about changes in billing procedures on its website and Alabama Medicaid published a monthly newsletter known as *Provider Insider* which was mailed to and made available to all Medicaid-enrolled providers.

q.      The provisions of the Provider Manual pertaining to psychologists were found at Chapter 34 of the Provider Manual and updates posted on the Alabama Medicaid website and published in the *Provider Insider* referenced Chapter 34 for any changes to billing procedures and codes applicable to psychologists and services rendered by psychologists.

r.      On or about June 28, 2010, Alabama Medicaid issued an alert to all enrolled psychologists indicating that certain service documentation requirements had been changed for

claims submitted for psychological services rendered to Medicaid-eligible patients. Specifically, the alert stated that: "Modifiers will be appended to procedure codes when services are performed by eligible allied mental health professional staff. The reimbursement rate for services performed and billed with a modifier will be 75% of the allowable rate." The modifiers identified in the alert were as follows:

    **U6** for a Licensed Professional Counselor (LPC) or Associate Licensed Counselor (ALC)

    **U7** for a Licensed Marriage and Family Therapist (LMFT)

    **AJ** for a Licensed Certified Social Worker (LCSW)

    **HO** for an individual with a masters degree or above, not yet licensed

    s.    A similar notice of the requirement to use modifiers for claims involving allied mental health professionals appeared in the July 2010 *Provider Insider* newsletter and the Provider Manual was updated in July 2010 to reflect the requirement that modifiers were to be used when the provider performing the services was one of these allied mental health providers.

    t.    Defendant LASHAWN DENISE ANTHONY received and reviewed the alert and the *Provider Insider* announcing the requirement that modifiers be used for allied mental health professionals, effective July 1, 2010, and ANTHONY was aware of this change to Chapter 34 of the Provider Manual. ANTHONY was likewise aware that the majority of services being provided by YEFS counselors were being provided by allied mental health professionals.

    u.    YEFS employed one psychologist and one psychiatrist during the period from July 1, 2010, through on or about May 1, 2012. The primary duties of the psychologist and psychiatrist were to review treatment plans and not to render face-to-face psychotherapy services to Medicaid-eligible patients. Additionally, YEFS employed approximately 25 other individuals

who were counselors or therapists meeting the description of allied mental health professional staff as set forth in the Provider Manual, and whose primary duties were to provide face-to-face psychotherapy services to Medicaid-eligible patients at their homes or at other locations such as schools where the patients were students.

## COUNTS 1 - 5
## (Health Care Fraud)

2. The factual allegations contained in Paragraph 1 of the Introduction section of this Indictment are realleged and incorporated herein as if copied verbatim.

3. Beginning on or about December 28, 2006, and continuing up to at least May 1, 2012, in Elmore County, Alabama, in the Northern Division of the Middle District of Alabama, and elsewhere, the defendant, LASHAWN DENISE ANTHONY ("ANTHONY"), in connection with the delivery of and payment for health care benefits, items and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting interstate commerce, as defined in Title 18, United States Code, Section 24(b), that is, Alabama Medicaid, and to obtain by means of materially false and fraudulent pretenses and promises, money and property owned by and under the custody and control of Alabama Medicaid, in connection with the delivery of and payment for health care benefits, items and services.

## PURPOSE OF THE SCHEME AND ARTIFICE

4. It was the purpose of the scheme and artifice for the defendant, LASHAWN DENISE ANTHONY, to unlawfully enrich herself through the submission of false and fraudulent Medicaid claims and to engage in "upcoding," that is, submitting false and fraudulent claims to Medicaid for psychotherapy services represented as having been provided and rendered by a psychologist when, in truth and in fact, the defendant knew that a psychologist did not provide and

did not render the psychotherapy services face-to-face in an office or outpatient facility but rather an allied mental health professional had actually provided and rendered the face-to-face services.

## THE SCHEME AND ARTIFICE

5.	The manner and means by which the defendant sought to accomplish and carry out the scheme and artifice included, among others:

6.	Defendant LASHAWN DENISE ANTHONY would submit and cause to be submitted to Alabama Medicaid through its fiscal agent, HP Enterprise Services, LLC, on behalf of YEFS a Medicaid Provider Enrollment Application on or about December 28, 2006, which ANTHONY had signed as Executive Director of YEFS.

7.	Defendant LASHAWN DENISE ANTHONY would submit and cause to be submitted to Alabama Medicaid through its fiscal agent, HP Enterprise Services, LLC, on behalf of YEFS an Electronic Funds Transfer Authorization Agreement on or about December 28, 2006, which ANTHONY had signed as Executive Director of YEFS.

8.	Defendant LASHAWN DENISE ANTHONY would open a bank account at Colonial Bank in Wetumpka, Alabama, in the name of YEFS on which she was the sole signatory. Defendant LASHAWN DENISE ANTHONY would open a bank account at First Community Bank in Wetumpka, Alabama, in the name of YEFS, on or about May 7, 2010, on which ANTHONY was the sole signatory.

9.	Between on or about July 1, 2010, and on or about May 1, 2012, defendant LASHAWN DENISE ANTHONY, submitted and caused to be submitted upcoded claims to Alabama Medicaid totaling approximately $761,676.00, for which YEFS received payments totaling approximately $761,676.00.

## ACTS IN EXECUTION OF THE SCHEME AND ARTIFICE

10.     On or about the dates specified as to each count below, in the Middle District of Alabama, and elsewhere, the defendant, LASHAWN DENISE ANTHONY, in connection with the delivery of and payment for health care benefits, items and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Alabama Medicaid, and to obtain by materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of said health care benefit program, by upcoding claims for psychotherapy services actually rendered by allied mental health professionals but falsely billed to Alabama Medicaid as if provided by a psychologist, to wit:

| Count | Medicaid Patient | Date of Claim | Amount Billed | Amount Paid | CPT Code |
|---|---|---|---|---|---|
| 1 | A.B.M. | 8/7/10 | $71.00 | $71.00 | 90806 |
| 2 | Z.S.M. | 8/9/10 | $71.00 | $71.00 | 90806 |
| 3 | D.D.A. | 8/10/10 | $71.00 | $71.00 | 90806 |
| 4 | S.L.M. | 4/26/12 | $71.00 | $71.00 | 90806 |
| 5 | K.D.J. | 4/27/12 | $71.00 | $71.00 | 90806 |

11.     Patient A.B.M. was seen by employees of YEFS from on or about August 7, 2010, through on or about February 27, 2012. During that time, defendant LASHAWN DENISE ANTHONY, by and through YEFS, billed Alabama Medicaid and caused Alabama Medicaid to be billed $4,125.00. Medicaid paid YEFS $4,125.00 for these services based upon the false claims, which falsely represented that a psychologist had actually rendered the face-to-face psychotherapy services when, in truth and in fact, an allied mental health professional had rendered the services.

12. Patient Z.S.M. was seen by employees of YEFS from on or about August 9, 2010, through on or about September 25, 2011. During that time, defendant LASHAWN DENISE ANTHONY, by and through YEFS, billed Alabama Medicaid and caused Alabama Medicaid to be billed $3,438.00. Medicaid paid YEFS $3,438.00 for these services based upon the false claims, which falsely represented that a psychologist had actually rendered the face-to-face psychotherapy services when, in truth and in fact, an allied mental health professional had rendered the services.

13. Patient D.D.A. was seen by employees of YEFS from on or about August 10, 2010, through on or about April 26, 2012. During that time, defendant LASHAWN DENISE ANTHONY, by and through YEFS, billed Alabama Medicaid and caused Alabama Medicaid to be billed $5,005.00. Medicaid paid YEFS $5,005.00 for these services based upon the false claims, which falsely represented that a psychologist had actually rendered the face-to-face psychotherapy services when, in truth and in fact, an allied mental health professional had rendered the services.

14. Patient S.L.M. was seen by employees of YEFS from on or about September 10, 2010, through on or about April 26, 2012. During that time, defendant LASHAWN DENISE ANTHONY, by and through YEFS, billed Alabama Medicaid and caused Alabama Medicaid to be billed $5,648.00. Medicaid paid YEFS $5,120.00 for these services based upon the false claims, which falsely represented that a psychologist had actually rendered the face-to-face psychotherapy services when, in truth and in fact, an allied mental health professional had rendered the services.

15. Patient K.D.J. was seen by employees of YEFS from on or about May 18, 2011, through on or about April 27, 2012. During that time, defendant LASHAWN DENISE ANTHONY, by and through YEFS, billed Alabama Medicaid and caused Alabama Medicaid to be billed $3,053.00. Medicaid paid YEFS $3,053.00 for these services based upon the false claims,

which falsely represented that a psychologist had actually rendered the face-to-face psychotherapy services when, in truth and in fact, an allied mental health professional had rendered the services.

All in violation of Title 18, United States Code, Section 1347.

### COUNTS 6-10
### (False Statements Relating to Health Care Matters)

16. The factual allegations contained in Paragraph 1 of the Introduction section of this Indictment are realleged and incorporated herein as if copied verbatim.

17. On or about the dates set forth below, in Elmore County, Alabama, in the Northern Division of the Middle District of Alabama and elsewhere, defendant LASHAWN DENISE ANTHONY, knowingly and willfully did make and cause to be made a materially false, fictitious and fraudulent statement and representation in connection with the delivery of, and payment for, the delivery of health care benefits, items and services by YEFS to Alabama Medicaid patients, to wit: defendant LASHAWN DENISE ANTHONY represented on claims and caused to be represented on claims submitted and caused to be submitted to Alabama Medicaid, on the dates specified below, that the services reflected on such claims had been provided by a psychologist when, in truth and in fact, defendant LASHAWN DENISE ANTHONY knew and should have known, that the individuals rendering the services for YEFS were allied mental health professionals.

| Count | Medicaid Patient | Date of Claim | Amount Billed | Amount Paid | CPT Code |
|---|---|---|---|---|---|
| 6 | D.D.A. | 10/22/10 | $84.00 | $84.00 | 90847 |
| 7 | T.D.F. | 4/11/11 | $84.00 | $84.00 | 90847 |
| 8 | O.D.L. | 4/13/11 | $84.00 | $84.00 | 90847 |
| 9 | E.M.A. | 5/3/11 | $71.00 | $71.00 | 90806 |
| 10 | D.R.T. | 8/8/11 | $84.00 | $84.00 | 90847 |

All in violation of Title 18, United States Code, Section 1035(a)(2).

A TRUE BILL:

*[signature]*
Foreperson

GEORGE L. BECK, JR.
UNITED STATES ATTORNEY

*[signature]*
Robert G. Anderson
Assistant United States Attorney